Morgan, J.,
dissenting:
Plaintiffs recovered $2,054 damages against defendants in these two cases, Nos. 3636, 3637, (which were consolidated for trial, judgment for one-half the aforesaid amount in each case) on a breach of contract for the sale of $7,04.8 worth of sheep, and the judgments are so manifestly unreasonable and disproportionate that I cannot concur in the conclusion reached by my associates affirming them, because it is not, in my opinion, in harmony with exact justice, and not a correct application of the law in respect to the damages allowed.
While the record leads me to a different conclusion from that reached by the trial court, as to whether the defendants defaulted in their contract to buy the sheep, no dissent is made as to this conclusion, as there was. testimony upon which such finding could be based.
The evidence on the question of damages, however, was wholly insufficient upon which to base a judgment for any amount, and especially the amount allowed, which is, to my mind, oppressive, and vastly in excess of what justice would require, and borders upon the imposition of a penalty upon the defendants for failure to take the sheep, as the only reason they did not take them was on account of the bankers’ panic, because of .which their checks were not acceptable in payment for the sheep, and the cash could not be obtained. Plaintiffs, themselves, could not get the cash to pay the owners from whom they had originally purchased the sheep, without first getting *174 it from the defendants. If plaintiffs had paid the owners in full for the sheep, and then accepted defendants ’ checks and taken credit in defendants’ bank, until the panic was over, they would have been paid in cash, and no difficulty would have arisen. So. it seems the plaintiffs were about as “deep in the mud” as the defendants were “in the mire, ” so far as cash was concerned.
Nevertheless, the plaintiffs sued the defendants, and alleged that they “had purchased the said lambs solely for the purpose of delivering the same to defendant in accordance with said contract; * * * That after the absolute refusal of the defendant to accept the said lambs, the plaintiffs, in order to prevent a total loss of the said lambs, shipped the same to the market at Denver, Colorado, and placed the same on the market for sale; * * * that the plaintiffs sold said lambs in the said open market at Denver for the highest price which the plaintiffs could obtain; * * * That the difference between the said contract price of the said lambs and the amount realized from the sale of same as aforesaid is $977.78. That owing to the aforesaid demoralized condition of the stock market it was impossible for the plaintiffs to receive any greater amount from the sale of said lambs than' was received. ’ ’
Thus the plaintiffs plant themselves squarely upon the right to sell the property and sue for the difference between the best price that could be obtained on the market, or the nearest market, and the contract price. But when the testimony is read, it is found that one of the plaintiffs testified that they did not sell “the said lambs” and did not ship “the same,” but only sold 1,366 thereof, and put into the shipment 714 at a différent station and from another herd, and then sold the 2,080 thus gathered together, claiming, however, that the 714 were just as good as those they had purchased and had arranged to deliver to the defendants. One of the plaintiffs testified, *175 even, in answer to a question as to whether he sold the same sheep he had ready for delivery to the defendants, that “the 1,366 were the same sheep — that is, part of them — they were the same sheep. Q. But the remaining 700 were not? A. We loaded them at á different point; they were not the same sheep that were loaded at Carthage.” This testimony clearly indicates that even a part of the 1,366 was not taken from the sheep they had ready to deliver to the defendants, and that, certainly, all of the 714 were not taken therefrom. The query arises: What did they do with all of the 2,080 sheep that they had ready to deliver to the defendants, and if they were sold, how much did they get for them? They testified to a shipment and sale of a portion of them, but there is no testimony as to a sale of the others. As they relied upon recovering the difference between the contract price and what they sold the sheep for, it is quite important to know what they did with the sheep which they did not ship and sell, and, if they sold them,. did they sell for more or less than defendants were to pay? The measure of damages here is, according to the pleadings, the evidence and the judgment,- the difference between the contract price and the amount received on a re-sale; or, the loss sustained, on such rersale, by the plaintiffs, if they sustained any loss. Because/ if they sustained no loss, no action lies.
The majority opinion, with the possible exception of the notice required under the third remedy provided, correctly states the law, that:
“Upon breach by the vendee of his executory contract to purchase chattels and receive and pay for the same upon delivery, the vendor, in case title has not passed and he is in possession of the goods, may store the same for the vendee, give him notice thereof, and thereupon sue and recover the full contract price; or, he may keep the goods and recover the difference between *176 the contract price and the market price thereof at the time and place of delivery mentioned in the contract j or, he may sell the goods for the best price he can obtain and recover from the vendee the loss sustained, generally measured by the difference between the contract price and the net proceeds derived from the sale.”
Plaintiffs adopted and relied upon the third remedy above suggested, and claim to have resold the sheep; but the majority opinion says, conceding that the sheep sold were not the same that were to be delivered to defendants, that:
“The purpose of the re-sale by the vendor, in addition to saving unnecessary loss to himself, or the vendee, was thereby to obtain evidence of and establish the market price or value of the property at the time of the controversy, rather than to rely upon what must otherwise have been a matter of conjecture or opinion.”
The majority opinion thus permits the plaintiffs to recover upon the second remedy suggested, and not upon the third, upon which they relied, and upon which the judgment is based.
The majority opinion states, further, that:
“There was some evidence tending to show that some of the sheep actually delivered on re-sale were not fully up to the grade required by. the contract, and that some died en route. But the evidence quite clearly shows the market price in Denver at the time of the sale for sheep of the character specified in the contract; and the amount of the loss or damage was ascertained by computation at such market price upon the number contracted at the average weight specified in the contract. Under the circumstances we think this furnished a fair basis for arriving at the loss sustained.”
Thus the majority opinion permits the plaintiffs not only to recover upon a different remedy from that which they selected and upon which they tried the case, and *177 upon which the judgment was entered, hut permits them to recover upon a grade of sheep that were not fully up to the grade required by the contract, simply because the market price, in Denver, at the time and'place of the sale, for sheep, of the character specified in the contract,, was shown. The evidence, however, discloses that the sheep were sold in Denver, over 500 miles from the place of delivery, and a month after the time of delivery. Further on, the majority opinion states that, “It is wholly immaterial whether the sheep were the identical animals, so long as they were of a corresponding grade.” But the opinion says there was some evidence tending to show that some of the sheep were not of a corresponding grade; and the record discloses there was undisputed evidence to this effect., Mr. Farr, the man who purchased the sheep, testified that he sold part of them to a Mr. Wilson; that all of the sheep he sold to Wilson were taken from those he purchased from plaintiffs; and Mr. Wilson testified that the sheep he bought from Mr. Farr were a “mixed bunch, a few long-wooled, coarse-wooled sheep. They were not all good, open-wooled lambs. At the stockyards there were forty-three counted out as sheep and yearlings. There were about a dozen that were not openwooled lambs.” There was no testimony in- rebuttal, and hence this testimony was uncontradicted, although plaintiffs did testify that the sheep that were shipped were up to the contract, but neither of them was present when all of them were shipped, nor when any of them were delivered in Denver.' Thus the plaintiffs are permitted to recover upon a remedy which they never relied upon in their complaint, nor in their testimony,' nor in the theory upon which the case was tried, and upon which a judgment was rendered, and also upon a sale of sheep that were not only different from those sold to the defendants, but not of as good a grade. Defendants are thus deprived of a substantial right, especially, because *178 they have never had any opportunity to rebut the testimony as to the market value upon which the plaintiffs were allowed to recover; and, generally, because no proof of a market value, at the time and place of delivery, was made, and no definite proof thereof, at any other time or place. The defendants went to trial, and the case was tried, upon the claim by the plaintiffs that they resold the sheep for the best price' they could obtain, and the defendants were never apprised, before or during the trial, that any claim would be made as to the market price, or any attempt to recover upon that remedy,- and their first knowledge that the plaintiffs did recover upon that remedy will be when they read, or have notice of, the opinion of this court.
The majority opinion seems to have adopted the view taken by the lower court when it was said in the findings that “they (plaintiffs) simply sold out the herd of sheep remaining, up here.” “I believe for the best price they could obtain.” And the plaintiffs are permitted to recover upon the sale of what they had left, out of about 15,000 head of sheep, and after upwards of 13,000 head had been culled therefrom. (One of the plaintiffs testified that, “there might have been a few under fifty pounds, but .it was their privilege to weigh them and throw them out.”) There is no testimony, even, to show or upon which to "base any definite conclusion, but what the plaintiffs sold all of the sheep which they had ready to deliver to the defendants, and shipped and sold upon the market a remnant of 1,366, at Gfrants, New Mexico, after disposing of all the rest of about 15,000 head which 'they claim to have had at the time and place of delivery, from which they intended to select the 2,080 for the defendants.
Suppose, however, we say this court is justified in concluding that plaintiffs’ complaint might fit an action adopting the second remedy suggested, and in affirming *179 this judgment — giving the plaintiffs $2,054 damages on a contract of sale of 2,080 lambs — nevertheless, the evidence will disclose that the plaintiffs never brought themselves within the purview of any right to recover for the market value, for the reason, no doubt, that their entire, purpose was to recover upon another theory, that is, the difference between the price they sold the sheep for and the price defendants were to pay. It would have been an easy matter for them to have established the market value at the time and place of delivery, but no testimony was 'introduced for such purpose, and none crept in, under the proof as to what they sold the sheep for, from which any definite conclusion can he reached. A mere statement that there was no market at Grants, New Mexico, the place of delivery, made as a reason for selling at Denver, and what the market price was in Denver, 500 miles away, and a. month after the time of delivery, and the sale of one bunch of sheep different in some instances as to grade, and the testimony of one witness as to what the market price in Denver was, without giving the date, established nothing as to the market value at the time and place of delivery, or anything near to it.
Furthermore — and particular attention is called to this testimony — one of the plaintiffs testified that when the 1,366 were loaded at Grants, New Mexico, the owners agreed to release the plaintiffs from their contracts of purchase as to all sheep that had strayed too far away to be gathered together, for shipment, if plaintiffs would take the 1,366, which one of the plaintiffs testified was all they had left at Grants. If 2,080 strayed away, then all that defendants were to receive-are still there; at least, 714 must be. What was plaintiffs’ loss on these, if any? This loss, under the allegations of the complaint and the evidence, and in all fairness, is the true measure and basis of damages. And, again, plaintiffs testified that there were others who defaulted in their contracts to buy; is *180 it not right to assume, in the absence of any testimony thereupon, that at least a portion of the remnant, even of the 1,366, were sheep that others failed to take, especially when one of the plaintiffs testified “part of them were the same sheep” the defendants failed to take? All of these things show the absolute insufficiency of the evidence.
Plaintiffs. demand the last cent which the law, on account of its universality, gives to them, and the same strict rule should be applied when it comes to their claim and proof of damages. Plaintiffs’ own testimony discloses that they not only failed to prove themselves within the rule or remedy suggested in the majority opinion as to a re-sale of the sheep, but they also failed to establish any market value at the time and place of delivery so as to entitle them to recover upon the second remedy suggested by the majority opinion — that is, upon the difference between the selling price and the market value of the sheep, and they certainly established, by their own testimony, that they sustained a loss only as to 1,366 head.
Defendants contend that they should have had notice from the plaintiffs of their intention to resell the sheep. It would have been no trouble for the plaintiffs to have given this notice, and it would have been evidence of an intention to deal fairly with the defendants. It would have given defendants an opportunity to have protected themselves. It seems to have been no trouble to notify them to get their cash to pay for the sheep. The authorities are somewhat in conflict as to the necessity of notice, but the better rule is that each case must be decided upon its own facts and circumstances. — Magnes v. Sioux City N. & S. Co., 14 Colo. App., 219, 59 Pac., 879.
In this case the court held that notice of the time and place, under the law, was not necessary, but, as to notice of intention to resell, it is held that:
*181 “We are not compelled to go to the verge of holding that there is no necessity to inform the vendee of the' intention to resell, nor of holding that the vendor may dispense with this notice nnder any and all circumstances.. All we- intend to hold is that under the circumstances disclosed by this record, the vendor was- under no obligation to give the vendee this notice. ”
In J. D. Best Co. v. Brewer, 50 Colo., 455, 115 Pac., 726, Campbell, J., said:
“Counsel for defendant cites a number of authorities on the appropriate measure of damages where a vendor sues a vendee who refuses to carry out a contract of sale. They may correctly apply the rule under their respective facts. The court properly instructed the jury here that there were several remedies open to plaintiff, and that, where a defendant wrongfully refused to accept a consignment of goods which he has purchased, and where the title has not entirely passed from the seller, or where the buyer wrongfully refuses to receive the goods and gives his consent thereto, the seller may, as he did here,'take possession of the goods, and, after due notice to the buyer, sell them for the best obtainable price, and recover the difference, if any, between the amount so received and the contract price. This, was proper under the evidence in this case, and the rights of defendant were sufficiently guarded and it certainly cannot complain of this instruction. — 35 Cyc., 520; Magnes v. Sioux City N. & S. Co., 14 Colo. App., 219.” [The italics are mine.]
The reason no notice was given discloses to my mind, as the evidence throughout the trial discloses, that when plaintiffs sold this remnant of sheep, they did not have in mind any suit against defendants, but were simply disposing of what they had left out of the purchase and sale of a great number of sheep, over 100,000, mostly from New Mexico, selling six carloads to Farr and keeping the balance of the 10,000 of those shipped to Denver, *182 for their own use, thus clearing up the purchase, sale and delivery of sheep in New Mexico for that year.
The majority opinion says: “We agree with both the reasoning and the conclusion of Judge Bissell, in Magnes v. Sioux City N. & S. Co., supra.” There is a conclusion in that case to which especial attention is directed, concerning the measure of damages, which is quite applicable to the present ease, as follows:
“Whether there was or was not a market price, whether there was a possibility to make a sale at another or greater price, whether the trees could have been preserved and a market made or a seller procured, all these things were left entirely unexplained by the company, nor was' there otherwise any proof on which to base a judgment for the difference between the price at which the property was sold and that which Magnes had agreed to pay for it. This difference was assumed to be the measure of damages and the measure of recovery. While, as we have already said, this might under some circumstances control, under the proof it was wholly illegitimate and there is in the record no evidence showing that the company sustained damages to the extent of $175, which was their recovery.
‘ ‘ Since this is true, we are compelled to set aside the judgment and remand the cause for further consideration. ’ ’
The result of the majority opinion is that, conceding plaintiffs- could not recover upon the right or remedy stated in their complaint, and upon which the case was tried, and judgment rendered, they may, nevertheless, recover upon the second remedy suggested — that is, upon the theory that they kept the sheep and sued for the difference between the contract price and the fair market valué at the time and place of delivery. This, in view of the circumstances, the indefiniteness and insufficiency of the testimony, and the law applicable to the case, consid *183 ering at all times-the excessive damages obtained and the substantial rights of defendants denied, ought not to be the decision of this court, and with deference to ■the view of my associates, it is my opinion the causes should be reversed and remanded.